# RECORD NO. 16-1492

## IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

---

### BRIAN SCOTT DUNN,

*Plaintiff - Appellee,*

v.

### SHERIFF MORGAN MILLIRONS,

*Defendant-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
AT ROANOKE

---

## OPENING BRIEF OF APPELLANT

---

Jim H. Guynn, Jr.
GUYNN & WADDELL, P.C.
415 South College Avenue
Salem, Virginia 24153
(540) 387-2320 Phone
(540) 389-2350 Facsimile
jimg@guynnwaddell.com

*Counsel for Appellant*
*Sheriff Morgan Millirons*

**LANTAGNE LEGAL PRINTING 801 East Main Street Suite 100 Richmond, Virginia 23219 (804) 644-0477**
**A Division of Lantagne Duplicating Services**

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. 16-1492        Caption: Brian Dunn v. Morgan Millirons

Pursuant to FRAP 26.1 and Local Rule 26.1,

Sheriff Morgan Millirons
(name of party/amicus)


who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐ YES ☑ NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☑ NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐ YES ☑ NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: _____5/16/2016_____

Counsel for:  Sheriff Morgan Millirons

## CERTIFICATE OF SERVICE
**************************

I certify that on _____5/16/2016_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Thomas E. Strelka, Esq.
L. Leigh R. Strelka, Esq.
Strelka Law Office, P.C.
119 Norfolk Avenue, SW, Suite 330
Roanoke, VA 24011
thomas@strelkalaw.com
leigh@strelkalaw.com

_____                    _____5/16/2016_____
(signature)                                       (date)

- 2 -

# TABLE OF CONTENTS

Page(s)

CORPORATE DISCLOSURE

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT ....................................................... 1

STATEMENT OF ISSUES PRESENTED ............................................. 1

STATEMENT OF THE CASE ............................................................... 1

    I.    Statement of Facts ................................................... 2

    II.    Procedural Posture ................................................ 4

SUMMARY OF THE ARGUMENT ..................................................... 5

ARGUMENT ........................................................................................ 6

    I.    Standard of Review ................................................ 6

    II.    THE DISTRICT COURT ERRED BY DENYING SHERIFF MILLIRONS QUALIFIED IMMUNITY ........................... 6

        a.    Dunn's Statements in his meeting with Sheriff Millirons were not protected by the First Amendment ............................... 8

        b.    Any constitutional protection for Dunn's speech was not clearly established at the time of his termination ..................... 12

            i.    *Garcetti provided minimal guidance for distinguishing between employee and citizen speech* ........................................................... 13

            ii.    *The Fourth Circuit applied* Garcetti *by looking to the kind of contextual factors available here* ................. 16

i

        *iii.*    *In light of Supreme Court and Fourth Circuit precedent, it was not "clearly established" that Dunn's statements were protected by the First Amendment* .................................................................... 19

CONCLUSION ........................................................................ 22

REQUEST FOR ORAL ARGUMENT ...................................... 23

CERTIFICATE OF COMPLIANCE ......................................... 23

CERTIFICATE OF SERVICE ................................................. 24

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Anderson v. Creighton*,
    483 U.S. 635 (1987)......................................................................12

*Andrew v. Clark*,
    561 F.3d 261 (4th Cir. 2009) .......................................................16

*Bevis v. Bethune*,
    232 F. App'x. 212 (4th Cir. 2007)................................. 9, 16, 17, 18, 19, 20, 21

*Bland v. Roberts*,
    730 F.3d 368 (4th Cir. 2013) .......................................................16

*DiMeglio v. Haines*,
    45 F.3d 790 (4th Cir. 1995) .........................................................15

*Edwards v. City of Goldsboro*,
    178 F.3d 231 (4th Cir. 1999) ..............................................12, 15, 22

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006)....................... 4, 7, 8, 10, 13, 14, 15, 16, 20, 22

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982)......................................................................6

*Hunter v. Town of Mocksville*,
    789 F.3d 389 (4th Cir. 2015) ........................................7, 8, 9, 11, 16

*Jean v. Collins*,
    155 F.3d 701 (4th Cir. 1998) .......................................................15

*Lane v. Franks*,
    134 S. Ct. 2369 (2014)...............................................7, 8, 11, 13, 16

*Maciariello v. Sumner*,
    973 F.2d 295 (4th Cir. 1992) ..............................................12, 19, 22

iii

*Malley v. Briggs*,
475 U.S. 335 (1986)..................................................................................12, 19

*Mills v. City of Evansville, Ind.*,
452 F.3d 646 (7th Cir. 2006) ......................................................9, 10, 11, 20

*Mitchell v. Forsyth*,
472 U.S. 511 (1985)........................................................................................1

*Mitchell v. Rice*,
954 F.2d 187 (1992) ......................................................................................6

*Mpoy v. Rhee*,
758 F.3d 285 (D.C. Cir. 2015).....................................................................15

*Nolan v. Terry*,
No. 7:04CV00731, 2006 U.S. Dist. LEXIS 65219 (W.D. Va. Sept. 13,
2006) ...........................................................................................................20

*Parrish v. Cleveland*,
372 F.3d 294 (2004) ......................................................................................6

*Paske v. Fitzgerald*,
785 F.3d 977 (5th Cir. 2015) .......................................................................9

*Pickering v. Board of Education*,
391 U.S. 563 (1968)....................................................................................7, 9

*Pruitt v. Pernell*,
360 F. Supp. 2d 738 (E.D.N.C. 2005) ........................................................20

*Raub v. Campbell*,
785 F.3d 876 (4th Cir. 2015) .................................................................6, 12

*Rohrbough v. University of Colo. Hospital Authority*,
596 F.3d 741 (10th Cir. 2010) ......................................................9, 10, 18, 20

*Shenoy v. Charlotte-Mecklenburg Hosp. Auth.*,
521 F. App'x. 168 (4th Cir. 2013)........................... 9, 10, 11, 16, 17, 18, 19, 20

iv

*S.P. v. City of Takoma Park*,
    134 F.3d 260 (4th Cir. 1998) ..............................................................6

*West v. Murphy*,
    771 F.3d 209 (4th Cir. 2015) ..............................................................7

## STATUTES

28 U.S.C. § 1291 ..............................................................................1

28 U.S.C. § 1331 ..............................................................................1

## CONSTITUTION

Const. amend. I ......................................................................5, 8, 18, 19

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  This Court has jurisdiction under 28 U.S.C. § 1291.  On March 31, 2016, the district court entered an order denying Sheriff Millirons' motion for summary judgment on qualified immunity—a "final decision" for purposes of 28 U.S.C. § 1291, *e.g. Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).  Sheriff Millirons timely filed his notice of appeal.

## STATEMENT OF THE ISSUES PRESENTED

I.    Did the district court err by denying Sheriff Millirons qualified immunity?

## STATEMENT OF THE CASE

This case arises from Appellant Sheriff Morgan Millirons' termination of Bryan Scott Dunn, a former Giles County Sheriff's Deputy and a member of the Giles County Board of Supervisors.  Dunn alleges Sheriff Millirons terminated his employment following a meeting with the Sheriff in which Dunn made statements regarding the operation of an animal shelter that the Sheriff's Office managed.  Dunn sued, claiming that his statements were constitutionally protected, and that his termination in retaliation for those statements violated the First Amendment.  Sheriff Millirons moved for summary judgment, arguing that Dunn's statements were made as an employee rather than a private citizen—or at least reasonably

1

seemed to be—and Dunn's claim was therefore barred by qualified immunity.  The District Court denied Sheriff Millirons' motion for summary judgment, and Sheriff Millirons filed this appeal.

## I.  Statement of Facts.

Appellant Morgan Millirons is the Sheriff of Giles County, Virginia.  JA 211.  Sheriff Millirons hired Appellee Bryan Scott Dunn in 2008, as a sergeant in Sheriff Milliron's chain of command.  JA 6, 7, 40-41, 214-215.  Dunn was subsequently promoted to the rank of Lieutenant.  JA 6-7.  While employed by the Sheriff's Department, Dunn ran for and was elected to the Board of Supervisors of Giles County, Virginia ("the Board").  JA 7.  Before running for his seat on the Board of Supervisors, Dunn asked for and received Sheriff Millirons' permission to do so.  JA 7, 67.

In early 2013, Dunn became aware of concerns about the Giles County Animal Shelter, an animal shelter managed by the Sheriff and funded by the Board of Supervisors in the Giles County budget.  JA 8.  Specifically, the Board received complaints from Giles Animal Rescue ("GAR"), a volunteer group which helped staff the shelter, about the conditions of the shelter. JA 70-71.  GAR also complained that Chastity Perkins, the animal shelter's only paid staff member, was being paid for hours she was not working.  JA 9-10, 80.

2

Dunn alleges that the Board of Supervisors asked him to meet with Sheriff Millirons to discuss the concerns about the management of the animal shelter, particularly that Chastity Perkins was being overpaid. JA 92-93. The meeting occurred in Sheriff Millirons' office during work hours. JA 94. At that meeting, Dunn indicated that the issues with the animal shelter were not going to go away and would cause problems if "we were audited." JA 93. Dunn specifically indicated that "we," meaning the Sheriff's office, would "be in trouble" if those issues came to light. JA 110. Dunn was concerned because, given his position of authority in the Sheriff's Department, he believed he could be criminally liable for the department's mismanagement of the shelter. JA 13, 119. Sheriff Millirons dismissed Dunn's concerns as to both issues. JA 12.

In his deposition, Dunn testified that he tried hard to keep board business "separate from sheriff business," and this meeting was "the only discussion [he] ever had with [Sheriff Millirons] about Board business." JA 94. Dunn later asked Sheriff Millirons during "a work related conversation, at work" whether "we [were] getting anywhere with this," to which Sheriff Millirons did not respond. JA 121. During the course of GAR's complaints, Sheriff Millirons had meetings directly with GAR and the County Administrator to discuss the issues with the shelter. JA 10.

Dunn alleges that subsequent to their meeting, Sheriff Millirons began to treat Dunn differently. JA 12. The relationship between Sheriff Millirons and Dunn deteriorated, and Dunn was ultimately terminated in October of 2013. JA 8.

## II. Procedural Posture.

Dunn filed his Second Amended Complaint on October 9, 2014. In Count III of that Complaint, Dunn claimed that Sheriff Millirons terminated him in retaliation for statements made in their meeting, in violation of the First Amendment. JA 20. Sheriff Millirons moved for summary judgment, arguing that Dunn's statements were made as an employee, not a citizen, and therefore were not protected by the First Amendment under *Garcetti v. Ceballos*, 547 U.S. 410 (2006). Sheriff Millirons also argued that qualified immunity shielded him from liability in this case. It was not clearly established that Dunn spoke as a citizen under the circumstances of the discussions regarding the animal shelter and summary judgment was proper on qualified immunity grounds.

The district court denied summary judgment. Noting that the Supreme Court had "declined to focus on where an employee's speech was made, or whether the speech related to the subject matter of the employee's employment," JA 516, and that Dunn was not directly responsible for the maintenance and operation of the shelter, JA 517, the district court found that Dunn had adduced sufficient evidence

4

to establish that he spoke as a citizen about the animal shelter. JA 517. The district court denied Sheriff Millirons' qualified immunity argument on similar grounds. The district court reasoned that Sheriff Millirons' belief that the speech was made in Dunn's capacity as an employee was "contrary to existing precedent," because the fact that the statements were made in the office was "not dispositive." JA 522. Sheriff Millirons filed this appeal, challenging the district court's determination on both prongs of the qualified immunity analysis.

## SUMMARY OF THE ARGUMENT

In a conversation with his employer, Sheriff Millirons, in the Sheriff's office, during business hours, while both were in uniform involving an item of work interest, then Lt. Dunn was speaking as an employee of the Sheriff. Dunn is not entitled to First Amendment protection for his statements in the meeting and cannot prevail on his claim for damages arising from termination following the meeting. Sheriff Millirons reasonably believed that Dunn was speaking as an employee and cannot be held liable for violating Dunn's rights under the First Amendment when the Sheriff terminated Dun's employment.

# ARGUMENT

## I. STANDARD OF REVIEW.

This Court reviews an order denying summary judgment on the basis of qualified immunity *de novo*, "using [its] full knowledge of relevant precedent and limiting [its] review to the district court's legal conclusions." *Parrish v. Cleveland*, 372 F.3d 294, 301 (2004). In so doing, this Court must "consider the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in that party's favor." *Mitchell v. Rice*, 954 F.2d 187, 190 (1992).

## II. THE DISTRICT COURT ERRED BY DENYING SHERIFF MILLIRONS QUALIFIED IMMUNITY.

Qualified immunity bars claims against government officials performing discretionary functions whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *S.P. v. City of Takoma Park*, 134 F.3d 260, 265 (4th Cir. 1998) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is a two-pronged inquiry, which asks (1) whether the plaintiff has established the violation of a constitutional right; and (2) whether that right was clearly established at the time of the alleged violation. *See e.g. Raub v. Campbell¸* 785 F.3d 876, 881 (4th Cir. 2015). Because qualified immunity bars claims which fail under either prong, this Court may take up the "clearly established" prong first, resolving the case without

6

addressing the constitutional issue. *E.g. West v. Murphy*, 771 F.3d 209, 214 (4th Cir. 2015).

At issue here is whether Dunn's speech was constitutionally protected, such that his termination based on that speech violated his First Amendment rights. Though the First Amendment protections available to public employees are limited by "the interests of the State, as an employer, in promoting the efficiency of the public services it performs through employees," *Hunter v. Town of Mocksville*, 789 F.3d 389, 397 (4th Cir. 2015) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)), public employees nevertheless retain the right to speak "as a citizen on matters of public concern." *Id.* Thus, in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the Supreme Court established a threshold distinction between speech made as a citizen and speech made as a public employee. *Lane v. Franks*, 134 S. Ct. 2369, 2378 (2014). When an employee speaks as an employee, he "has no First Amendment cause of action based on his or her employer's reaction to that speech." *Garcetti*, 547 U.S. at 418. Only when a public employee speaks as a citizen does the possibility of a First Amendment claim arise. *E.g. Hunter*, 789 F.3d at 397.

At the heart of this appeal is the distinction between citizen and employee speech. When Dunn spoke to Sheriff Millirons about the Sheriff's department policy, he spoke as an employee of the Sheriff's department, and his statements fall

7

outside the protection of the First Amendment. Furthermore, even if this Court resolves the constitutional question in Dunn's favor, the law was not so clearly established that Sheriff Millirons would know Dunn was speaking as a citizen, and qualified immunity bars his claim. These arguments are addressed in turn.

### a. Dunn's Statements in his meeting with Sheriff Millirons were not protected by the First Amendment.

Whether a public employee's statements were made as an employee or a citizen requires "a 'practical' inquiry into the employee's 'daily professional activities' to discern whether the speech at issue occurred in the normal course of those ordinary duties." *Hunter*, 789 F.3d at 397 (quoting *Garcetti*, 547 U.S. at 422, 424). Thus a district attorney who writes a memorandum pursuant to his official duties speaks as an employee, *Garcetti*, 547 U.S. at 424[1], while a director of a state program who testifies under subpoena in a criminal trial—even about information that relates to his public employment—speaks as a citizen. *Lane*, 134 S. Ct. at 2378-79. In distinguishing between employee and citizen speech, the Circuits generally look to the facts and circumstances of the speech at issue, including the person to whom it was made, particularly when that person is in the speaker's

---

[1] *Garcetti*, which controlled the district court's analysis, is discussed extensively in Sheriff Millirons' qualified immunity discussion, *infra*.

chain-of-command;[2] the context of the speech, particularly if made in a meeting the peaker was able to attend because of his employment;[3] whether the statements were made privately or publicly;[4] and the content of the speech.[5]

The Seventh Circuit addressed similar facts in *Mills v. City of Evansville, Ind.*, 452 F.3d 646, 647-48 (7th Cir. 2006). In that case, Mills, a police sergeant, attended a meeting on departmental premises at which her chief described a plan to shift officers' duties to cope with a manpower shortage. *Id.* at 647. After the meeting, Mills made statements to senior officers in the lobby of the building, indicating that the plan would not work and that community organizations would resist it. *Id.* Finding that Mills' statements were not entitled to constitutional protection, the Seventh Circuit reasoned:

---

[2] *Shenoy v. Charlotte-Mecklenburg Hosp. Auth.*, 521 F. App'x. 168, 173 (4th Cir. 2013) (per curiam); *accord Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 746 (10th Cir. 2010); *see also Pickering*, 391 U.S. at 569-70 (noting that teachers statements were not "directed towards any person with whom [she] would normally be in contact in the course of his daily work as a teacher).

[3] *Bevis v. Bethune*, 232 F. App'x. 212, 215-16 (4th Cir. 2007) (per curiam) (relying on fact that Bevis "used his role as…supervisor to access the meeting"); *Paske v. Fitzgerald*, 785 F.3d at 984 (relying on facts that officers statements were made in response to job-related questions, while contributing to formation and execution of official policy, and in a closed-door meeting of ranking police officers which he could not have attended as a citizen); *Mills v. City of Evansville, Ind.*, 452 F.3d 646, 648 (7th Cir. 2006) (discussed *infra*).

[4] *Shenoy*, 521 F. App'x. at 173; *see Paske*, 785 F.3d at 984; *see also Hunter*, 789 F.3d at 399 (relying on fact initial meeting between plaintiffs occurred in their free time away from their offices).

[5] *Paske*, 785 F.3d at 984; *Mills*, 452 F.3d at 647-48.

> Mills was on duty, in uniform, and engaged in discussion with her superiors, all of whom had just emerged from [the Chief's] briefing. She spoke in her capacity as a public employee contributing to the formation and execution of official policy. Under *Garcetti* her employer could draw inference from her statements about whether she would zealously implement the Chief's plans or try to undermine them; when the department drew the latter inference it was free to act accordingly.

*Id.* at 648.

As in *Mills*, the circumstances of Dunn's speech indicate that he was speaking as an employee, not a citizen. Dunn's statements concerned departmental policy, and were made in a closed-door meeting at work during a work day, in uniform, to a superior officer in the chain of command. A citizen could not simply walk into the Sheriff's office to discuss Sheriff's department policy. *See Paske*, 785 F.3d at 984 (noting that "private citizens do not generally have the right to participate in closed-door meetings of ranking police officers"). On the other hand, discussing department policy with a superior officer in charge of implementing that policy falls well within the ordinary duties of a Sheriff's deputy, particularly a Lieutenant with a leadership role in the department. *See Shenoy*, 521 F. App'x. at 172 ("Speech that is 'not explicitly required as part of an employee's day-to-day job' may nevertheless fall within the scope of that employee's official duties") (quoting *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 746 (10th Cir. 2010)). Thus Dunn's statements were not entitled to constitutional protection.

10

This result is consistent with First Amendment policy. Complaints about the department's function, made up the chain of command, impute only the government's interest in "controlling the operation of its workplaces." *Hunter*, 789 F.3d at 397 (quoting *Lane*, 134 S. Ct. at 2377). Limiting protection for statements of this kind merely allows the government to control the kind of on-the-job dissent and insubordination that hinder "the efficient provision of public services," *Garcetti*, 547 U.S. at 418; it does not deprive employees of the right to reveal corruption and mismanagement through the classic channels of citizen speech, like reports to the media. *Compare Mills*, 452 F.3d at 648, *and Shenoy*, 521 F. App'x. at 173 (statements made to hospital authority chain-of-command unprotected) *with Hunter*, 789 F.3d at 398-99 (reports of racism in police department made to Governor's Office by officers who met at NAACP meeting protected), *and Pickering*, 391 U.S. at 568 (letter written to newspaper protected). A contrary rule would give public employees free reign to criticize their superiors and department policies directly during work hours without fear of punishment, merely because their ideas would be protected speech if written to a newspaper. The First Amendment protects public employees from being stripped of rights they would *otherwise have* as citizens;[6] it does not give them license to use their public position

---

[6] *See Lane*, 134 S. Ct. at 2377 ("After all, public employees do not renounce their citizenship when they accept employment, and this Court has cautioned time and

and related access to other public officials as additional channels of protected speech.

### b. Any constitutional protection for Dunn's speech was not clearly established at the time of his termination.

Even if this Court determines that Dunn made his statements as a citizen rather than as an employee, Sheriff Millirons is entitled to qualified immunity on the second prong of the analysis because the nature of Dunn's speech was not "clearly established."  *E.g. Raub*, 785 F.3d at 881.  Whether a right is "clearly established" is determined at "a high level of particularity," *Edwards v. City of Goldsboro*, 178 F.3d 231, 250-51 (4th Cir. 1999); i.e. "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Thus qualified immunity is properly withheld only where binding precedent at the time of the alleged violation created a "bright line" rule crossed only by "the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also See Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.")

---

again that public employers may not condition employment on the relinquishment of constitutional rights.")

The district court denied qualified immunity, finding it "clearly established" that Dunn made his statements as a citizen rather than as an employee. In so holding, the district court relied solely on *Garcetti*, the seminal Supreme Court case establishing the distinction between employee and citizen speech. However, the district court failed to consider *Garcetti*'s express limitations and Fourth Circuit precedent on which Sheriff Millirons was entitled to rely. *See e.g. Lane*, 134 S. Ct. at 2382-83 (granting qualified immunity based on incorrect Eleventh Circuit precedent). Looking to *Garcetti* and its Fourth Circuit progeny, it was not clear to Sheriff Millirons that Dunn was speaking as a citizen; indeed, the available cases strongly suggested that Dunn was speaking as an employee. Accordingly, the district court erred by denying qualified immunity.

### i. **Garcetti** *provided minimal guidance for distinguishing between employee and citizen speech.*

In *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006), the Supreme Court established that the First Amendment protects speech made by a public employee only when made "as a citizen." In that case, Ceballos, a deputy district attorney, wrote an internal memorandum to his supervisors, describing misrepresentations in a warrant application and recommending a particular disposition of a case. 547 U.S. at 413-14. He participated in a "heated" meeting with the prosecutor of that case, and testified for the defendant in a hearing dealing with that warrant. *Id.* at

13

414. After being reassigned and denied a promotion, Ceballos sued, claiming retaliation for his memorandum in violation of the First and Fourteenth Amendments. *Id.* at 415.

Reversing the Ninth Circuit, the Supreme Court held that Ceballos' memorandum was not protected speech. *Id.* at 417. Looking to precedent discussing the competing governmental and private interests impacted by public employee speech, the Court held that the "possibility of a First Amendment claim arises" only after an initial determination that a public employee "spoke as a citizen on a matter of public concern." *Id.* at 418. "[W]hen public employees make statements pursuant to their official duties," the Court reasoned, "the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. Thus the parties' agreement that "[Ceballos'] expressions were made pursuant to his duties as a calendar deputy" rendered those statements unprotected. *Id.* at 421, 424.

Though *Garcetti* required courts to distinguish between employee and citizen speech, it provided only minimal guidance on how to do so. The Court noted in dicta that neither the fact that Ceballos expressed his views inside his office rather than publicly nor the fact that the memorandum concerned the subject matter of Ceballos' employment was independently "dispositive." *Id.* at 420-21. However, because the parties agreed that Ceballos made his statements pursuant to his duties,

14

the Court had "no occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." *Id.* at 424. Instead, the Court simply indicated that "the proper inquiry is a practical one," *id.*, and provided specific examples of citizen speech: writing a letter to a local newspaper, and discussing politics with a co-worker. *Id.* at 423.

Thus *Garcetti* explicitly failed to establish the distinction between employee and citizen speech where, as here, the nature of the statements was unclear. Nor did the Supreme Court provide additional guidance on this issue until *Lane*, decided a year after Dunn's termination in September of 2013.[7] Accordingly, Sheriff Millirons was required to rely on Fourth Circuit applications of *Garcetti*'s "practical inquiry" to determine whether Dunn's speech was made in his capacity as a citizen or employee. *See E.g. Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999) (noting that courts ordinarily "need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose") (quoting *Jean v. Collins*, 155 F.3d 701, 709 (4th Cir.

---

[7] Notably, *Lane* narrowed *Garcetti*'s inquiry from analyzing an employee's duties to analyzing their *ordinary* job responsibilities, *E.g.* 134 S. Ct. at 2378, an adjective which neither *Garcetti* nor any other Supreme Court case had added as a qualifier. *See Mpoy v. Rhee*, 758 F.3d 285, 295 (D.C. Cir. 2015). Sheriff Millirons' entitlement to qualified immunity thus turns only on whether he could reasonably believe Dunn's speech fell within his job duties, not his "ordinary" job duties—subsequent developments in the law have "no application to the specific question of qualified immunity." *DiMeglio v. Haines*, 45 F.3d 790, 799 (4th Cir. 1995).

15

1998)); *accord Lane*, 134 S. Ct. at 2381-83 (analyzing circuit precedent to determine application of qualified immunity).

### ii. The Fourth Circuit applied Garcetti by looking to the kind of contextual factors available here.

Prior to Dunn's termination, the Fourth Circuit had two opportunities to apply *Garcetti*'s "practical inquiry" in cases with "room for serious debate." In both cases—*Bevis v. Bethune*, 232 F. App'x. 212 (4th Cir. 2007) (per curiam) and *Shenoy v. Charlotte-Mecklenburg Hosp. Auth.*, 521 F. App'x. 168 (4th Cir. 2013) (per curiam)—the Fourth Circuit found the speech at issue unprotected by looking to its circumstances and content.[8]

In *Bevis*, the executive director of a mental health center (Bevis) was constructively discharged after he supported complaints made by his subordinate, Nickles. 232 F. App'x. at 213. Bevis made statements supporting Nickles in three

---

[8] Though the Fourth Circuit discussed the *Garcetti* distinction briefly in two other cases, the facts and posture of those cases make them inapposite here. In *Andrew v. Clark*, 561 F.3d 261, 264-68 (4th Cir. 2009), the Fourth Circuit vacated the district court's dismissal of a retaliation claim based on a memorandum a police officer provided to the *Baltimore Sun*. The Court was bound by allegations that the memorandum was "unauthorized" and "not part of his official responsibilities" per Rule 12(b)(6), and thus that case "provides no guidance regarding when a police officer speaks as a citizen rather than as an employee." *Hunter*, 789 F.3d at 389 (Niemeyer, Diss.). In *Bland v. Roberts*, 730 F.3d 368 (4th Cir. 2013), like in *Garcetti*, the parties did not dispute that the plaintiffs' statements (made on Facebook and at a polling location in support of a candidate for Sheriff) were made as citizens. *Id.* at 385-87; *see Garcetti*, 547 U.S. at 423 ("discussing politics with a co-worker" is citizen speech). Even if read to imply the *Garcetti* analysis, these cases are factually distinct and of no import to Sheriff Millirons.

16

meetings, including one discussing disciplinary actions against Nickles for her comments criticizing the incoming department director. *Id.* at 213, 215. Finding Bevis' statements unprotected, the *Bevis* court reasoned that statements made in these kinds of meetings, pertaining to internal discipline, were not speech by a citizen on a matter of public concern. *Id.* at 215.

Compellingly, the Court found "[Bevis'] expression on that occasion was *not* made pursuant to his official duties as Nickle's supervisor," *id.* at 215 (emphasis added), because he was neither invited nor required to attend the meeting. *Id.* at 215-16. However, because "Bevis used his role as Nickle's supervisor to access the meeting, and those in attendance understood his presence to be in his supervisory capacity," he spoke in his capacity as an employee. *Id.* at 215-16. The *Bevis* court also rejected Bevis' argument that he acted in a dual role, both as Nickle's supervisor and as a citizen who "wanted to hear all of the issues that she was going to present," without analysis. *Id*. at 216.

The Fourth Circuit applied similar analysis in *Shenoy v. Charlotte-Mecklenburg Hosp. Auth.* In that case Shenoy, a licensed pathologist, made statements critical of his hospital's administration at two committee meetings: first, at a meeting of a peer review committee which Shenoy chaired; and second, at a meeting of the Medical Executive Committee, to which Shenoy often reported as chair of the peer review committee. 521 F. App'x. at 170. Shenoy was

subsequently terminated for his "personal attacks" on administration, and brought suit alleging First Amendment retaliation. *Id.* at 171.

Affirming summary judgment in favor of the hospital authority, the Fourth Circuit held that Shenoy's speech was made as an employee. Rejecting Shenoy's argument that he was not speaking pursuant to his official duties because his committee work was voluntary and unpaid, the court noted, "[s]peech that is 'not explicitly required as part of an employee's day-to-day job' may nevertheless fall within the scope of that employee's official duties." *Id.* at 172 (quoting *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 746 (10th Cir. 2010)). Beyond the fact that Shenoy's statements came at meetings he attended in his role as a committee chairman, the court relied explicitly on the fact that "[t]he comments were not made in public and were made to people farther up the chain-of-command at CHS." *Id.* at 173 (quoting *Rohrbough*, 596 F.3d at 746 for the proposition that "speech directed at an individual or entity within an employee's chain-of-command is often found to be pursuant to that employee's official duties").

Read together, these cases suggested that the Fourth Circuit's approach to this "practical inquiry" is a contextual one. That a statement is not part of the employee's official duties, *Bevis*, 232 F. App'x. at 215, or required as part of the speaker's day-to-day job, *Shenoy*, 521 F. App'x. at 171, does not mean that the statement is made as a citizen. Instead, the circumstances of the speech control its

18

status.  That the employee was able to speak at that time and place because of their employment militates toward the conclusion that they are speaking as an employee. 232 F. App'x at 215.  That statements are made in private rather than in public, though "nondispositive" under *Garcetti*, 547 U.S. at 421, is nevertheless highly relevant.  521 F. App'x at 173.  It would stand to reason that the content of the speech, also described as "nondispositive" in *Garcetti*, 547 U.S. at 421, is also relevant.  Finally, the person to whom the speech is directed must be considered, particularly where those statements are made to individuals up the chain-of-command.  521 F. App'x at 173.

### iii.    In light of Supreme Court and Fourth Circuit precedent, it was not "clearly established" that Dunn's statements were protected by the First Amendment.

Given *Garcetti*'s express limitations and the analysis of the subsequent Fourth Circuit cases discussed *supra*, Sheriff Millirons transgressed no "bright line" by determining that Dunn was speaking as an employee.  *Maciariello*, 973 F.2d at 298.  Indeed, applying the Fourth Circuit's contextual analysis to Dunn's statements that conclusion was likely correct, and certainly not the kind of "plain incompetence" necessary to withhold the protection of qualified immunity.  *Malley*, 475 U.S. at 341.

Per the Fourth Circuit's guidance, Sheriff Millirons was entitled to determine whether Dunn spoke as a citizen or an employee by looking to the circumstances of

his speech. Dunn made his statements directly to Sheriff Millirons—Dunn's superior officer in the chain-of-command. *Shenoy*, 521 F. App'x at 173; *accord Rohrbough*, 596 F.3d at 746. The statements were made privately, *Shenoy*, 521 Fed. Appx. at 173, in Sheriff Millirons' office while both men were on duty and in uniform. Certainly Sheriff Millirons could assume that Dunn used his status as a Sheriff's deputy to access the meeting—a citizen not affiliated with the Sheriff's department would have been unable to do so.

Although neither *Bevis* nor *Shenoy* dealt with police officers, and therefore gave the Fourth Circuit no occasion to consider whether being in uniform suggests that an officer is speaking as an employee, Sheriff Millirons could reasonably believe that fact was relevant. Applying *Garcetti*, the Seventh Circuit found that being in uniform was a relevant factor in *Mills*, 452 F.3d at 647-48, discussed *supra*, a case which had been cited as correctly interpreting *Garcetti* in Sheriff Millirons' district. *See Nolan v. Terry*, No. 7:04CV00731, 2006 U.S. Dist. LEXIS 65219, at *13-15 (W.D. Va. Sept. 13, 2006). Moreover, courts have generally considered the fact that an officer was in uniform as relevant, if not dispositive, to whether they were acting as an officer in other contexts. *See e.g. Pruitt v. Pernell*, 360 F. Supp. 2d 738, 743 (E.D.N.C. 2005) (color of state law).

This was not the kind of prototypical citizen speech described in *Garcetti*, like writing to a local newspaper or speaking to a co-worker about politics—Dunn

20

was discussing the management of an animal shelter under the control of the Sheriff. Beyond the obvious connection to Sheriff's office business, Dunn himself indicated, by referring to the Sheriff's office as "we," JA 93, 110, that he was speaking as an employee of the Sheriff.[9]   Sheriff Millirons had addressed GAR's concerns directly in meetings with the County Administrator and GAR members themselves. JA 10. He would simply have no reason to believe Dunn—on duty, in uniform, and in Sheriff Milliron's office during a work day—was *for the first* time speaking to Sheriff Millirons as a member of the Board of Supervisors. JA 94.

Though the district court found "contrary to existing precedent"[10] Sheriff Millirons' argument that the content and context of Dunn's speech could inform his conclusions about the nature of that speech, the district court failed to identify any precedent indicating why that was the case. Indeed, the sole case cited was *Garcetti* itself, for the propositions that "the fact that statements are expressed inside an employee's office, rather than publicly, 'is not dispositive,' and that 'employees in some cases may receive First Amendment protection for expressions made at work.'" *Id.* (quoting *Garcetti*, 547 U.S. at 420). Though the district court was correct that there are cases in which employees may receive First Amendment

---

[9] Notably, even if the facts indicated that Dunn was speaking *both* in his capacity as an employee and a citizen, the Fourth Circuit rejected this kind of "dual role" argument in *Bevis*, 232 F. App'x at 215.
[10] JA 522.

protection for statements made at work, *Garcetti* did not establish what those cases are.    Noting that some of the factors available to Sheriff Millirons were independently "nondispositive" does not establish the contours of the First Amendment at the "high level of particularity" necessary to withhold qualified immunity.    *Edwards*, 178 F.3d at 251.    The district court denied qualified immunity—implicitly finding a "bright line" between employee and citizen speech so clearly established that only the "plainly incompetent" could inadvertently cross it—without reference to precedent actually applying *Garcetti*'s practical inquiry. *Maciariello* 973 F.2d at 298.    Thus the district court erred by denying qualified immunity to Sheriff Millirons.

## CONCLUSION

For the foregoing reasons, Appellant Sheriff Millirons respectfully requests that this Court reverse the judgment of the district court and grant summary judgment in his favor.

SHERIFF MORGAN MILLIRONS

By: /s / Jim H. Guynn, Jr.
Counsel

Jim H. Guynn, Jr.
Counsel for Appellant
Guynn & Waddell, P.C.
415 S. College Avenue
Salem, VA 24153
Telephone: (540) 387-2320

22

Facsimile: (540) 389-2350
jimg@guynnwaddell.com

## REQUEST FOR ORAL ARGUMENT

Counsel for Appellant asserts that the issues raised in this brief may be more fully developed through oral argument, and respectfully requests the same.

## CERTIFICATE OF COMPLIANCE

1. This brief of the appellant has been prepared using Microsoft Word software, Times New Roman font, 14 point proportional type size.

2. EXCLUSIVE of the corporate disclosure statement; table of contents; table of authorities; statement with respect to oral argument; any addendum containing statutes, rules, or regulations, and the certificate of service, this brief contains 5,197 words.

Date: June 27, 2016.

By: /s/ Jim H. Guynn, Jr.
Of Counsel

## **CERTIFICATE OF SERVICE**

I certify that on June 27, 2016, I electronically filed the foregoing document

with the Clerk of Court using the CM/ECF System, which will send notice of such

filing to the following registered CM/ECF users:

Thomas E. Strelka
L. Leigh Rhoads Strelka
STRELKA LAW OFFICE
119 Norfolk Avenue, SW, Suite 330
Roanoke, Virginia 24011
thomas@strelkalaw.com
leigh@strelkalaw.com
*Counsel for Appellee Brian Scott Dunn*


By: /s/ Jim H. Guynn, Jr.
Of Counsel