IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

BRIAN SCOTT DUNN,

*Plaintiff - Appellee,*

v.

SHERIFF MORGAN MILLIRONS,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
AT ROANOKE

**RESPONSE BRIEF OF APPELLEE**

Thomas E. Strelka
L. Leigh Rhoads Strelka
STRELKA LAW OFFICE
119 Norfolk Avenue, SW, Suite 330
Roanoke, Virginia 24011
(540) 283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com

*Counsel for Appellee*
*Brian Scott Dunn*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __16-1492__     Caption: __Brian Scott Dunn v. Morgan Millirons__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Brian Scott Dunn__
(name of party/amicus)

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.     Does party/amicus have any parent corporations?  ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
       If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?   ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Thomas Strelka          Date:      5/15/16

Counsel for: Appellee

## CERTIFICATE OF SERVICE
*****************************

I certify that on _____ May 15, 2016 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Jim H. Guynn, Jr., Esq.
Guynn & Waddell, PC
415 S. College Ave
Salem, VA 24153

/s/ Thomas Strelka                    5/15/16
_____        _____
      (signature)                        (date)

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE

TABLE OF AUTHORITIES ......................................................... iii

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION ...................................................... 1

STATEMENT OF ISSUES .......................................................... 1

STATEMENT OF THE CASE ....................................................... 1

    A.    PERMISSION TO RUN FOR OFFICE ........................... 2

    B.    PROTECTED SPEECH ........................................... 3

        1.    July 2013 Meeting ...................................... 4

    C.    DEMOTION ........................................................ 7

    D.    FRAUDULENT EVIDENCE ...................................... 9

SUMMARY OF THE ARGUMENTS ............................................... 10

ARGUMENT ......................................................................... 11

    A.    1983 ACTION .................................................... 11

        1.    Prong 1: A Matter of Public Concern .................. 13

        2.    Prong 2: Outweighing the Public Employer's Interest ......... 15

        3.    Prong 3: Substantial and Motivating Factor .......... 18

    B.    QUALIFIED IMMUNITY DOES NOT APPLY TO THE APPELLANT .............................................. 19

        1.    Bevis v. Bethune ...................................... 22

2. Shenoy v. Charlotte-Mecklenburg Hospital Authority ......... 24

CONCLUSION ................................................................................ 26

REQUEST FOR ORAL ARGUMENT ............................................. 26

CERTIFICATE OF COMPLIANCE.................................................. 27

CERTIFICATE OF SERVICE......................................................... 28

# TABLE OF AUTHORITIES

## CASES

Page

*Ashcroft v. al-Kidd,*
  563 U.S. 731 (2011) ............................................................ 20

*Bevis B. Bethune,* 232 F. App'x 212 (4th Cir. 2007) ............................. 22, 23

*Connick v. Myers,*
  461 U.S. 138, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983) ...12, 14, 15, 16, 21

*Cromer v. Brown,*
  88 F.3d 1315 (4th Cir. 1996) .................................................15

*Cutts v. Peed,* 17 F. App'x 132 (4th Cir. 2001)...................................14, 16, 17

*Durham v. Jones,*
  737 F.3d 291 (4th Cir. 2013) ............................................... 20

*Edwards v. City of Goldsboro,*
  178 F.3d 231 (4th Cir. 1999) ........................................... 20, 21

*Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst,*
  810 F.3d 892 (4th Cir. 2016) .................................................19

*Garcetti v. Ceballos,*
  547 U.S. 410 (2006) ................................................. 20, 21, 24

*Goldstein v. The Chestnut Ridge,*
  218 F.3d 337 (4th Cir. 2000) ........................................... 15, 16

*Harlow v. Fitzgerald,*
  457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) ......................19

*Henderson v. Simms,*
  223 F.3d 267 (4th Cir. 2000)..................................................21

*McVey v. Stacy,*
    157 F.3d 271 (4th Cir. 1998) ............................................................ 17, 18

*Meyers v. Balt. County,*
    713 F.3d 723 (4th Cir. 2013) .................................................................19

*Mills v. City of Evansville, Ind.,*
    452 F.3d 646 (7th Cir. 2006) .................................................................14

*Mt. Healthy City Sch. District v. Doyle,*
    429 U.S. 274 (1977) ...............................................................................13

*Perry v. Sindermann,*
    408 U.S. 593 (1972) ........................................................................ 12, 13

*Pickering v. Board of Education,*
    391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968) ...................... 17, 18

*Rankin v. McPherson,*
    483 U.S. 378, 97 L. Ed. 2d 315, 107 S. Ct. 2891 (1987) .........................12

*Robinson v. Balog,*
    160 F.3d 183 (4th Cir. 1998) ........................................................... 15, 16

*Shenoy v. Charlotte-Mecklenburg Hospital Authority*, 521 F. App'x
    168 (4th Cir. 2013) ............................................................................... 24

*Smith v. Gilchrist,*
    749 F.3d 302 (4th Cir. 2014) .................................................................19

*Stanton v. Sims,*
    134 S. Ct. 3 (2013) .................................................................................19

*Wilson v. Layne,*
    526 U.S. 603, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999) .......................19

## STATUTES

42 U.S.C. § 1983..........................................................................................1, 11

Va. Code § 15.2-403 ......................................................... 25

Va. Code § 18.2-472 ......................................................... 9

## CONSTITUTION

U.S. Const. Amend. I .............................................................*passim*

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The Appellee does not contest the Appellant's Statement of Subject Matter and Appellate Jurisdiction as contained within the Appellant's Opening Brief.

## STATEMENT OF THE ISSUES

1. Did the District Court err by denying the Appellant qualified immunity?

## STATEMENT OF THE CASE

The Appellee has spent a long career in law enforcement, including service with multiple law enforcement organizations. (Joint Appendix, hereinafter "J.A.", 38, 6:1-24, Transcript of Deposition of Appellee). In November of 2008, the Appellee was hired by the Appellant. (J.A. 6, 7, 40-41). Contemporaneous with this employment with the Appellant, the Appellee was also an elected official, to-wit, a member of the Giles County Board of Supervisors (hereinafter, "the Board,"). (J.A. 7). After a series of events beginning in the Spring of 2013, the Appellant demoted the Appellee on September 27, 2013 and ultimately terminated the Appellee's employment on October 21, 2013. (J.A. 19, 20).

The Appellee's Second Amended Complaint included a count alleging a violation of 42 U.S.C. § 1983 predicated upon an underlying First

Amendment violation. (J.A. 22). To sustain his claims against the Appellant, the Appellee must have engaged in some form of protected speech. It is the Appellee's theory of the case that, after having engaged in protected speech with his employer, his employer illegally retaliated against the Appellee based upon the protected speech. As detailed below, the Appellee made numerous statements to the Appellant regarding the illegality and inappropriateness of several actions and omissions on the part of the Appellant to the Appellant and others in the chain of command prior to the Appellee's termination.

### A.   PERMISSION TO RUN FOR OFFICE

Importantly, the Appellee was motivated to provide protected speech in the course and scope of his role on the Board. Prior to running for a position on the Giles County Board of Supervisors, the Appellee sought permission from the Appellant to run for office. Further, the Appellee set the tone for how things would move forward between himself and the Appellant should the Appellee win office.

> Q. Okay.   You had a discussion with Sheriff Millirons prior to running?
>
> A.   Yes, sir.
>
> Q.   Tell me about that discussion.

> A.      Actually, I went to Sheriff – Sheriff Millirons was off and went to his residence and I spoke to him, and I said, Sheriff, I'm asking your permission to run for the Board of Supervisors, and I believe that I told him at that time, I said, but before you say yes, I said, I want to give you an idea of some of the things that I'm definitely going to stand on, and one of them was the issues with the Regional Jail, and I still have issues with the Regional Jail.   I addressed some of those issues, but I think that we probably addressed a lot more of them if things had not went the way that they had with this, and he said, I don't care, so he gave me permission to run.

(J.A. 70, 39:8-39:24).  This scenario is evidence that from the beginning of the Appellee's path into County leadership, he wished to indicate to his employer that part in parcel to his position on the Board, the Appellee would adopt a platform of constitutionally protected messages.

## B.   PROTECTED SPEECH

In July of 2013, the other members of the Board requested that the Appellee approach the Appellant and discuss with him numerous issues plaguing the Giles County Animal Shelter (hereinafter, "the Shelter,").  (J.A. 95, 64:14-65:1).  At all times pertinent to this action, the Shelter was under the sole unilateral control and authority of the Appellant, but funded by the County as directed by the Board.  (J.A. 8). The Board had been notified of hazardous conditions at the Shelter due to complaints by Christine Link Owens, President of a volunteer-based organization that provided services

to the Shelter, Giles Animal Rescue, hereinafter, "G.A.R." G.A.R. had also complained that Shelter employee, Chastity Perkins was not working the required hours. (J.A. 9-10, 70-71, 80). The issues regarding the shelter had been widely reported in area newspapers. (J.A. 116).

### 1. July 2013 Meeting

The Appellee met with the Appellant within the Appellee's scope as an active Board member. The Appellee described this meeting he had with the Appellant in July of 2013 in his deposition:

> A.    So I went into his office and I told him, I said, I've come here to discuss something, and I think that I may have even said, I don't want to be discussing it, but we will have to discuss it, and I basically did tell him, the Board is upset; there is all of these complaints coming in about the animal shelter and how the animal shelter is being run, and I basically told him my concern about, again, my biggest concern was about Chastity being paid for hours that she wasn't working, and he had already knew that.
>
> We had previous meetings over the incident with the time sheets, and I told him, I said, you know, I'm afraid that, you know, this is not going to go away, and if we were audited and all of these things come to the front, it's not going to be good, I said, and I pled with him then; I said, you know, just make them pay her time back, put a time clock out at the shelter for Chastity, put a camera out there, and just, you know, investigate it and make sure

that she's working what she's supposed to be working.

(J.A. 96, 65:3-65:22).

The discussion moved toward G.A.R.'s involvement with the Shelter and the Appellant's desire to have them removed and banned from the property.

Q.      I need you to tell me exactly what he said [in response], and I think that your attorney wants you to tell me.

A.      He said if you can him, I'm kicking them out and I begged him, please don't kick them out.

Q.      You mean G.A.R. [Giles Animal Rescue]?

A.      Yes, and the volunteers, and that is when I said, put the cameras in, put a time clock in, investigate what is really going on, because even Melvin had – Melvin was coming to me and he said, they are talking bad about my daughter on Facebook and other topics and I want to sue them, and they are saying this and that about her, and I think that Melvin had the Sheriff pumped up over it, and I told Melvin to forget about it, take the high road and don't pay any attention to it, but the -- I think that we even discussed the comments about the dog food being stolen, and I told Morgan then, the dog food is not being stolen, the breaking into the -- we have a box out there; they are breaking in to get food to feed the dogs because she hasn't been out there for four days.  They are not stealing it and taking it home, so anyway, he got upset and he said that I just need to basically mind my own business and it would be in my best interest just not to worry about

5

it, so I could tell then that he wasn't happy that I confronted him about it.

Q. Okay. Anything else that you recall him saying in that conversation?

A. He just -- he gave the implication by telling me to drop it that it would be in my best interest, and I took that as to, you know, I better back off of it or he was going to do something disciplinary wise or whatever.

(J.A. 98-99, 67:18-68:24).

The Appellee informed the Appellant at this July, 2013 meeting, that, by mismanaging and neglecting the animal shelter (including lack of oversight of Shelter worker Ms. Perkins, neglect of the animals, improper allocation of funds by the Sheriff as to the management of shelter personnel, improper protocols and practices as to the spay/neuter deposit requirement at the shelter), he was exposing the entire Sheriff's office and the Appellee personally to criminal liability. (J.A. 16-17).

After this conversation between the parties, the Appellee testified that he followed up on this earlier discussion with the Appellant in August of 2013, by inquiring with the Sheriff whether the Sheriff had the situation "straightened out." (J.A. 124, 93:12-14).

## C.  DEMOTION

On September 27, 2013, the Appellant demoted the Appellee.  The reasoning behind the demotion, according to the Appellant, was related to an incident that occurred regarding the investigation of a burglary at a convenience store in Giles County.  The burglary was reported to the Giles County Sheriff's Office around 7:00 AM on September 1, 2013.  The Appellee did not begin his shift on September 1, 2013 until after 10:00 AM.  He proceeded to the convenience store at that time.  At the time that the Appellee arrived at the crime scene, other deputies had already visited the scene to process the evidence.   (J.A. 143-150).

The Appellee noticed numerous pieces of uncollected evidence at the scene including evidence of the use of bolt cutters by the burglars, foot prints, and vehicle tracks.  The other deputies had not processed this evidence properly and left the scene.  The Appellee then began a series of communications with the intent of receiving assistance from the other deputies regarding the collection of the relevant evidence.  The Appellee called the on-call deputy at the time, Thomas Gautier, but Deputy Gautier was not available.  The Appellee then called Deputy Eric Thwaites, a subordinate deputy in the chain of command, and Deputy Thwaites informed the Appellee that neither he nor forensic specialist Deputy Mason

Boggess, would be returning to the crime scene.  The Appellee next called Deputy Boggess, a subordinate deputy in the chain of command and the only on-call deputy capable of performing the forensic collection.  Mr. Boggess refused the Appellee's directives to return to the scene to collect evidence.  The Appellee proceeded to call Deputy Thwaites again only to hear Mr. Thwaites state that they refused to return to the crime scene as he and other deputies were engaged in a fantasy football meeting.  (J.A. 143-150).

The Office of the Sheriff uses a Computer Aided Dispatch, hereinafter "CAD," system in which employees digitally enter information regarding crime scene investigations.  In his narrative portion of his CAD entry for the investigation, the Appellee included the statement, "Unit 15 advised that he had plans and could not respond.  Unit 04 advised that Unit 15 was having his fantasy football meeting with Unit 09.  At this time, it was determined there were no technicians or investigators to assist on the investigation." (J.A. 143-150).

During the September 27, 2013 meeting between the Appellee and the Appellant, the Appellant angrily highlighted the Appellee's handling of the convenience store case as a reason for his demotion.  The Appellee noted that the Appellant had since directed that the CAD record be altered such

that the "fantasy football" comment would be deleted. The Appellee advised the Appellant that such an action was illegal. Pursuant to Va. Code § 18.2-472, "If a clerk of court or other public officer fraudulently makes a false entry, or erase, alter, secrete or destroy any record, including a micro photographic copy . . . he shall be guilty of a Class 1 misdemeanor and shall forfeit his office." (J.A. 143-150, 165-167).

### D. FRAUDULENT EVIDENCE

On October 21, 2013, the Appellant terminated the employment of the Appellee. During the course of discovery, the Appellant produced typewritten memoranda documenting alleged instances of insubordination by the Appellee, and indicated that the termination was based on the conduct outlined in the memoranda. The first memorandum was dated August 27, 2013 and the final was dated October 8, 2013. The Appellant testified that the memoranda were prepared on the dates listed therein. The Appellee had never before seen these documents. After the Appellee utilized a forensic digital consultant, findings indicated that the documents in question were created by the Appellant on a date long *after* the Appellee was terminated. The Appellee maintains that these forged documents are evidence supporting his claims. (J.A. 507).

The Appellant filed a Motion for Summary Judgment which the district court denied as to the Appellee's 1983 claim. The Appellant subsequently appealed on the basis of appellate review of the issue of qualified immunity.

## SUMMARY OF THE ARGUMENT

At the time of his July, 2013 meeting with the Appellant, the Appellee consistently engaged in protected speech. The Appellant chiefly addressed: (1) the Shelter itself; (2) the lack of attendance of Shelter worker Chastity Perkins despite being paid for full attendance; (3) the concerns of the Board of Supervisors and the public regarding the aforementioned; and (4) the potential for liability due to the handling of the Shelter. All of these matters were matters of public concern. Further, the Appellee was serving in his role as a Board of Supervisors member at the time of the discussion, an elected member of the public. If the Appellant had wished for the conversation in July of 2013 to never have occurred, he could have denied the Appellee permission to run for elected office. Thus, at the time that the Appellee won office, the Appellant surely expected, or should have expected, such conversations to occur as the parties had discussed their working relationship prior to it commencing. At the time of the utterance of protected speech, the Appellee was literally an agent of the public and it

is unreasonable for the Appellant to assume otherwise.  The Appellant is liable for demoting and terminating the Appellee in violation of the Appellee's First Amendment Rights.

ARGUMENT

## A.   1983 ACTION

Pursuant to 42 U.S.C. § 1983, any person who, under color of state law, deprives another of any rights, privileges or immunities secured by the Constitution and other laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.  Rather than creating substantive rights, § 1983 simply provides a remedy for rights that it designates. Thus, an underlying constitutional or statutory violation is required for liability under § 1983.  In the employment context, § 1983 actions generally arise in the forms of violations of constitutional rights, such as the First Amendment rights to freedom of speech and expression. In his Second Amended Complaint, the Appellee incorporated Count III, a violation of 42 U.S.C. § 1983 predicated upon the Appellant's retaliation against the Appellee due to the Appellee's exercise of his First Amendment rights.  (J.A. 19).

The First Amendment provides, in pertinent part, that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. Amend.

I.  While a public employee does not have a constitutional right to his job, a public employer "cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142 (1983).  It follows, therefore, that a public employer is prohibited from discharging or taking other adverse action against one of its employees on a basis that infringes the employee's constitutionally protected interest in freedom of speech.  *See Rankin v. McPherson*, 483 U.S. 378, 383-84, 97 L. Ed. 2d 315, 107 S. Ct. 2891 (1987) ("Vigilance is necessary to ensure that public employers do not use authority over employees to silence discourse, not because it hampers public functions but simply because superiors disagree with the content of employees' speech.").

Under § 1983, a public employer is prohibited from discharging or taking other adverse action against its employees on a basis that infringes the employee's constitutionally protected interest in freedom of speech or expression.  Moreover, a public employer is prohibited from threatening to discharge or to take other adverse action against its employees in an effort to chill the employee's rights under the First Amendment. *Rankin v. McPherson*, 483 U.S. 378, 383-84 (1987); *see also Perry v. Sindermann*,

408 U.S. 593 (1972).  To state a claim of retaliation under the First Amendment, the Appellee must demonstrate that:

> (1)  his speech or expression was constitutionally protected, that is, the speech or expression involved a matter of public concern; and
>
> (2)  the Appellee's interest in participating in the speech or expression outweighed the public employer's interest in promoting the efficiency of the public services it provides.
>
> (3)  his or her speech or expression was a substantial or a motivating factor in the adverse decision.

*Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 283-87 (1977).  If the Appellee employee meets these initial burdens, the burden shifts to the public employer to show by a preponderance of the evidence that the employee would still have been discharged in the absence of the protected speech or expression.  *Id.* at 283.

### 1.  Prong 1: A Matter of Public Concern

Regarding Prong 1 of this test, an employee's speech or expression touches on a matter of public concern when it can be fairly considered as relating to any matter of political, social or other concern to the community. Although the subject matter of the communication may generally be of public interest, the focus of the public concern inquiry is upon what is actually said or expressed.  The Appellee's speech regarding inappropriate

use of Giles County funds, improper management of the Shelter, and inappropriate treatment of animals at the Shelter, are matters that clearly touch upon public concern. The very fact that the Appellee engaged the Appellant in discourse regarding these issues as a member of the Board only underscores the public concern at hand. As an elected official, the Appellee served as an agent of the public, empowered by the people to make decisions on their behalf. The Appellee served in this role during the course of his discussion with the Appellee in July of 2013. Appellee's comments to the Appellant regarding the Appellant's alteration of police records also qualify as matters of public concern due to the statute expressly rendering the act unlawful. All of these factors make the instant matter highly distinguishable from the Seventh Circuit case cited in the Appellant's Brief.[1] In *Cutts v. Peed*, 17 F. App'x 132 (4th Cir. 2001), this Court determined that deputies of the Sheriff of Alexandria who had expressed statements regarding illegal racial discrimination at the office of the Appellant employer, without question touched upon matters of public concern.

Ascertaining whether a matter is of public concern requires examination of the "content, form, and context" of the statement. *Connick*

---

[1] *Mills v. City of Evansville, Ind.*, 452 F.3d 646 (7th Cir. 2006).

*v. Myers*, 461 U.S. 138, 147-48, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983); *Goldstein*, 218 F.3d at 352.  Although internal employment matters are not matters of public concern, *see Goldstein*, 218 F.3d at 352, statements . . . like those at issue here, involving purported fraud and racial discrimination in a law enforcement agency, indisputably do constitute matters of public concern.  *See Id.* at 353 (statements regarding public safety are "quintessential matters of public concern"); *Robinson v. Balog*, 160 F.3d 183, 188 (4th Cir. 1998) (speech seeking to bring to light "actual or potential wrongdoing or breach of public trust" is speech on a matter of public concern); *Cromer v. Brown*, 88 F.3d 1315, 1326 (4th Cir. 1996) (allegations of racial discrimination within law enforcement agency are matters of "serious public import"); *Id.* at 135.

## 2.  Prong 2: Outweighing the Public Employer's Interest

Pursuant to Prong 2, if the employee's speech addresses a matter of public concern, the interests of both parties must be balanced, weighing the employee's interests, as a citizen, in commenting upon matters of public concern against the government employer's interest in regulating the speech or expression of its employees to promote the efficiency of its public services.  Then, if the employee's interests outweigh the employer's, the employee must establish that the employer would not have taken the

challenged adverse employment action(s) but for the constitutionally protected conduct. *Connick v. Myers*, 461 U.S. 138, 146-47 (1983).

The *Cutts* Court analyzed whether the *Cutts* Appellees' interests in making their statements outweighed the Appellant Sheriff's interest in managing his office:

> Because the deputies' speech involves a matter of public concern, we turn to the question of whether their interest in making those statements outweighed Sheriff Peed's interest in managing the internal affairs of his office. The Sheriff contends that the undisputed facts demonstrate that he was justified in taking all of the challenged actions -- including discharging Cutts and Shabazz -- to protect his office's efficiency from the disruption caused by the deputies' complaints. Undoubtedly, charges of racial discrimination may impinge upon the harmony among co-workers or interfere with the operation of a sheriff's office. The record here, however, provides little evidence that this actually occurred, or that the racially charged environment in the sheriff's office stemmed from these employees' remarks rather than other people or events.
>
> An employer wishing to defend against specific allegations of impermissible retaliation must present evidence that the speech triggering his actions actually interfered with the functioning of his office, and may not merely assert a "generalized and unsubstantiated" interest against disruptions. *Goldstein*, 218 F.3d at 356; *Robinson*, 160 F.3d at 189. The Sheriff has put forth only speculative and unsubstantiated charges of office disruption. Moreover, the government's interest in efficiency generally bears more weight than an employee's

> interest in commenting on matters of public concern only when the employee-speaker is an agency-head or is in a policy making position. *See McVey v. Stacy*, 157 F.3d 271, 278-79 (4th Cir. 1998). The deputies were low ranking law enforcement officers without policy making authority. Accordingly, at this juncture, the deputies have alleged sufficient facts to satisfy the second prong of a retaliation claim.

*Id.* at 136.

As in *Cutts*, the Appellant in the instant matter has not produced any specific reliable evidence that supports the assertion that the Appellee's actions operated to interfere with the functions of the office. Moreover, as cited by *Cutts*, the Appellee in the instant matter was not an agency-head or a policy-maker with the Appellant employer. While the Appellee was a policy-making authority, it was only through the scope of his elected office. As a Lieutenant, he made no policy within the chain of command for his employer. *See McVey v. Stacy*, 157 F.3d 271, 278-79 (4th Cir. 1998). The Appellee has clearly demonstrated that he can satisfy Prong 2.

A court's charge in a First Amendment retaliation case is "to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Education*, 391

U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968).  The public's interest in hearing the employee's speech also weighs in the balance: "a stronger showing of public interest in the speech requires a concomitantly stronger showing of government-employer interest to overcome it." *McVey*, 157 F.3d at 279.  Here, the weight of the public's interest in the Appellee's speech is overwhelming.  The matter of the Shelter had been of great public concern evidenced by: (1) the subject matter itself; (2) discussion and investigatory steps undertaken by the Board of Supervisors; and (3) the Shelter and its issues had been mentioned numerous times in the local media at the time of the protected speech.  (J.A. 116).

### 3.   Prong 3: Substantial and Motivating Factor

Finally, Prong 3 is easily satisfied by the analysis provided above in this Brief.  The Appellee has offered three reasons supporting the theory that his protected speech linked with the Appellant's decision to retaliate: (1) changes in the Appellant's behavior toward the Appellee after he engaged in protected activities; (2) evidence undermining the reliable probative value of the Appellant's proffered evidence allegedly justifying the Appellee's termination; and (3) the short temporal proximity between the speech and the adverse employment actions.  Genuine questions exist as to the legitimacy of the Appellant's purported reason for demoting and

terminating the Appellee.  Thus, as it relates to Count III, the Appellant would have a difficult time proving that the Appellee would still be discharged in the absence of the protected speech.

### B.   QUALIFIED IMMUNITY DOES NOT APPLY TO THE APPELLANT

Qualified immunity "shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Meyers v. Balt. County*, 713 F.3d 723, 731 (4th Cir. 2013) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 907 (4th Cir. 2016) (quoting Wilson v. Layne, 526 U.S. 603, 615, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999)). Qualified immunity shields government officials from personal liability when "their conduct does not violate clearly established . . . rights of which a reasonable person would have known." *Smith v. Gilchrist*, 749 F.3d 302, 307 (4th Cir. 2014) (quoting *Stanton v. Sims*, 134 S. Ct. 3, 4 (2013)).

While a case directly on point is not required for a court to conclude that the law was clearly established, "existing precedent must have placed the . . . constitutional question beyond debate." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The burden of proof rests with the official asserting the defense. *Durham*, 737 F.3d at 299.

In defense of the Appellee's claims, the Appellant cites *Garcetti v. Ceballos*, 547 U.S. 410 (2006) for the general proposition that an employee making a statement to their employer in the official course of their duties and not as a citizen for First Amendment purposes, cannot be actionable. This reasoning is not new as this proposition and its interrelation with the issue of qualified immunity was analyzed well in the earlier case of *Edwards v. City of Goldsboro*, 178 F.3d 231, 246 (4th Cir. 1999). The difference between *Garcetti* and *Edwards* is that, as the Appellant has highlighted in his Opening Brief, the Appellee in *Garcetti* was very visibly not wearing the "hat" of a concerned public citizen at the time of his comments to his employer.

In *Edwards*, this Court held that the Appellee had properly expressed his First Amendment rights outside of his official capacity and also that qualified immunity did not apply to the police chief Appellant. The statements made in *Edwards* were expressed by the Appellee while off-duty

and in the context of an instructional course. Essentially, the *Edwards* Court concluded that the Appellee was not speaking in any way on behalf of the Appellant or in furtherance of the Appellant's business interests.

As described above, when the Appellee engaged in protected speech with his employer, he was not speaking in the course and scope of his role as a deputy in the employ of the Appellant, but as a concerned citizen Board member. The issues that he brought forth to the Appellant were matters of public concern affecting Giles County. Unlike *Garcetti*, the Appellee in the instant matter possessed a second role outside of the scope of his employment. It was through this role that he addressed the Appellant. This is an extremely distinguishing factor in every case the Appellant cites in his Opening Brief.

The Appellant is not entitled to qualified immunity if (1) the violation of the Appellee's constitutionally protected rights was clearly established at the time of the challenged acts and (2) a reasonable official would have understood that his conduct violated that clearly established law. *See Henderson v. Simms*, 223 F.3d 267, 271 (4th Cir. 2000). In this case, the law was clearly established: *Connick* and its balancing test were the law long before the challenged conduct took place. In the instant matter, not only can the Appellee prove his allegations, but the evidence at hand

demonstrates that (1) the violation of the Appellee's protected rights was clearly established as the time of the challenged acts, and (2) a reasonable official would have understood that his conduct violated that clearly established law. Qualified immunity should not apply to the Appellant.

### 1. *Bevis v. Bethune*

In support of his argument that qualified immunity should apply to him, the Appellant cites *Bevis B. Bethune*, 232 F. App'x 212 (4th Cir. 2007). The facts in *Bevis* could not be further removed from the instant matter. In *Bevis*, no matters of public concern were discussed. Instead, the allegedly protected speech in *Bevis* was the Mr. Bevis' "support" of a co-worker who was about to receive workplace discipline for badmouthing the new boss. The Court summarized thusly:

> Bevis claimed to have expressed additional support for Nickles [the co-worker] during a meeting with Binkley and Scully to discuss proposed disciplinary action against Nickles for improper communications she had made, specifically comments criticizing the incoming Director of the Department, George Gintoli. Scully and Binkley wanted to take more serious action against Nickles than the written warnings she had already received for other remarks.
>
> Bevis opined that "**<u>one should err on the side of caution on those kinds of things rather than take serious steps that you can't step back from easily.</u>**" As a result, Nickles simply received a "Memo of Clarification" of a previous Written

> Warning that detailed a permissible manner of making complaints and explained that certain other means of expressing her dissatisfaction were improper and disruptive.
>
> On November 17, 2000, however, Scully initiated further disciplinary action against Nickles in the form of a "Notice of Recommendation for [a Five-Day] Suspension." Bevis spoke on Nickles's behalf at a grievance hearing related to the Notice.

*Id.* at 213 (emphasis added). The plaintiff in *Bevis* discussed internal administrative workplace discipline of a co-worker. At no time was a public matter touched upon in *Bevis*. In the instant matter, the Appellee discussed matters of great public concern in his role as a member of the Board of Supervisors.

Further, the plaintiff in *Bevis*, "did not establish that he was speaking as a citizen on a matter of public concern. Instead, he made his comments at the meeting to discuss the appropriate means of reprimanding the employee. Further, the comments were made in appellee's role as a supervisor. Appellee also did not show that he engaged in constitutionally protected speech because he did not connect the alleged retaliation to protected speech. *Id.* The *Bevis* case and the instant matter could not be more distinguishable in regards to both the subject matter of the protected speech and the roles of the particular speakers.

### 2. *Shenoy v. Charlotte-Mecklenburg Hospital Authority*

The Appellant also cites *Shenoy v. Charlotte-Mecklenburg Hospital Authority*, 521 F. App'x 168 (4th Cir. 2013), in his argument that qualified immunity should apply. This contention fails because, just like *Bevis*, *Shenoy* is highly distinguishable from the instant matter. In *Shenoy*, the plaintiff was a physician who had volunteered to serve on a commission of physicians within the employer hospital. *Id.* at 170. The speech upon which Dr. Shenoy alleged was protected speech that touched upon a matter of public concern occurred when he spoke his opinions regarding alleged administrative "systemic failures" of the hospital. *Id.* At the time that Dr. Shenoy uttered this speech, he was presiding as a commission member in an open commission meeting.

In other words, Dr. Shenoy was speaking on matters regarding the hospital from his role as a board member on a commission that served the hospital. His speech was intertwined with his professional duties as a member of the hospital's commission. Clearly, Dr. Shenoy's speech fell within the gambit of *Garcetti*. The speech uttered by the Appellee in the instant matter was of great public concern and was stated from the position of a concerned member of the Board of Supervisors. While it may have been the duty of Dr. Shenoy to speak of matters of hospital concern as his

role on the hospital's commission, it was not the role of the Appellee to address matters of public concern as an *employee* of the Appellant. Consider Virginia Code § 15.2-403 (emphasis added):

> A. The board shall be **the policy-determining body of the county** and shall be vested with all the rights and powers conferred on boards of supervisors by general law, not inconsistent with the form of county organization and government herein provided.
>
> B. The board may require of all departments, divisions, agencies and officers of the county and of the several districts of the county such annual reports and other reports as in its opinion the business of the county requires.
>
> C. **The board may inquire into the official conduct of any office or officer, whether elective or appointive, of the county or of any district thereof**, and to investigate the accounts, receipts, disbursements and expenses of any county or district officer. For these purposes it may subpoena witnesses, administer oaths, and require the production of books, papers and other evidence. If any witness fails or refuses to obey any such lawful order of the board he shall be deemed guilty of a misdemeanor.
>
> D. The board shall, as soon as the county board form of county organization and government takes effect in the county, provide for the performance of all the governmental functions of the county in a manner consistent with this chapter.
>
> E. Whenever it is not designated herein what officer or employee of the county shall exercise any power or perform any duty conferred upon or

required of the county, or any officer thereof, by general law, then any such power shall be exercised or duty performed by that officer or employee of the county so designated by ordinance or resolution of the board.

In the instant matter, the Appellee was empowered by Virginia statutory law to make inquiries of the Appellant regarding matters of public concern. No speaker of allegedly protected speech in any of the cases cited by the Appellant can claim such distinction as the Appellee in this matter.

## CONCLUSION

In conclusion, for the aforementioned reasons, qualified immunity does not and should not apply to the Appellant. This matter should be remanded to the lower court for trial.

## REQUEST FOR ORAL ARGUMENT

The Appellee hereby requests oral argument of the issues aforementioned.

Respectfully submitted,

/s/ Thomas E. Strelka
Thomas E. Strelka
L. Leigh Rhoads Strelka
STRELKA LAW OFFICE
119 Norfolk Avenue, SW, Suite 330
Roanoke, Virginia 24011
(540) 283-0802
*Counsel for Appellee*
*Brian Scott Dunn*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R .App. P. 36(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft word in 14 point Georgia font.

2.      This brief complies with the type-volume limitation of Fed. R. App. P.32(a)(7)(B) because this brief contains 5,783 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.

July 26, 2016                      /s/ Thomas E. Strelka
                                           Thomas E. Strelka
                                           L. Leigh Rhoads Strelka
                                           STRELKA LAW OFFICE
                                           119 Norfolk Avenue, SW, Suite 330
                                           Roanoke, Virginia 24011
                                           (540) 283-0802
                                           thomas@strelkalaw.com
                                           leigh@strelkalaw.com

                                           Counsel for Appellee
                                           Brian Scott Dunn

# CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of July, 2016, I electronically filed the foregoing Response Brief of Appellee with the Clerk of the Court of Appeals for the Fourth Circuit using the CM/ECF system, which will send notification of such filing to the CM/ECF participants listed below.

Jim H. Guynn, Jr.
GUYNN & WADDELL, P.C.
415 South College Avenue
Salem, Virginia 24153
(540) 387-2320 Phone
(540) 389-2350 Facsimile
jimg@guynnwaddell.com

Counsel for Appellant
Sheriff Morgan Millirons

/s/ Thomas E. Strelka
Thomas E. Strelka
L. Leigh Rhoads Strelka
STRELKA LAW OFFICE
119 Norfolk Avenue, SW, Suite 330
Roanoke, Virginia 24011
(540) 283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com

Counsel for Appellee
Brian Scott Dunn